## HIRAM GLEASON *versus* SAMUEL DYKE.

The plaintiff, having purchased an equity of redemption sold on execution, paid off the mortgage, and the mortgagee, after cancelling the mortgage deed and the note secured thereby, and indorsing on the deed a discharge of the mortgage, delivered them up to the plaintiff, who, upon the payment of the amount for which the equity was sold, released to the mortgager all the right acquired by him under the sale ; and the mortgager subsequently promised to pay the plaintiff the amount due on the mortgage. It was *held*, that such express promise was valid, although the consideration was past ; that the plaintiff might maintain an action thereon, although by virtue of Revised Stat. *c.* 73, § 34, 35, he was the equitable assignee of the mortgage and therefore had another security ; and that, as the plaintiff was obliged to pay the mortgage debt in order to secure his equitable interest in the land, he might have recovered the amount if no such promise had been made.

THIS was an action to recover the amount of a promissory note for the sum of $ 300, made by the defendant in 1833,

and payable to the Massachusetts Hospital Life Insurance
Company, in one year from date with interest.

Gleason
<em>v.</em>
Dyke.

At the trial, before *Putnam* J.,.it appeared, that certain real
estate was mortgaged by the defendant, to secure the payment
of the note ; that on the 11th of November,` 1837, the de-
fendant's right to redeem the mortgaged premises, was sold on
executioi to the plaintiff, and a deed thereof on the same day
duly executed to him ; that on the 24th of the same month, the
plaintiff paid to the Massachusetts Hospital Life Insurance
Company, the amount due on such note, and thereupon the
company defaced the note by drawing a pen across the defend-
ant's name, and cancelled the deed of mortgage by tearing off
the seal and erasing the name of the mortgager, and indorsed
on the mortgage deed a release and discharge of the mortgage ;
that the note and the deed so indorsed, were thereupon deliv-
ered to the plaintiff; that on the 8th of January, 1838, the
plaintiff, by deed and on payment of the amount for which the
equity of redemption was sold on execution with interest, re-
leased to the defendant all the right which the plaintiff had ac-
quired by such sale ; that before this release was made, the de-
fendant knew that the plaintiff had paid the amount due on the
note ; and that some days after the execution of the release,
the defendant examined the note and mortgage for the purpose
of ascertaining the amount due to the plaintiff, and promised
him to pay the same.

The defendant thereupon contended, that without a previous
request to pay the note, such a promise was not sufficient to
sustain this action ; and the judge, for the sake of convenience,
so ruled.  If the Court should be of opinion, that such a
promise was sufficient to sustain the action, the defendau was
to be defaulted, and judgment to be rendered for the plaintiff,
for the amount paid on the note, with interest from the time of
payment.

The question, whether before the payment of the note, the
defendant requested the plaintiff to pay the same, was put to
the jury, who, on this point, found for the defendant.  Upon the
trial of this issue, the defendant contended, that the paymei t
of the mortgage and the indorsement on the mortgage deed,
operated as an assignment to the plaintiff, of the rights of the

original mortgagees, notwithstanding the seal had been torn off and the mortgager's name erased by the company, before it came into the possession of. the plaintiff; and the judge so instructed the jury, for the purpose of the trial.

If the Court should be of opinion, that this instruction was erroneous, the verdict was to be set aside and a new trial granted.

*Sept. 24th.* *R. A. Chapman,* for the plaintiff, cited to the point, that the payment of the mortgage by the plaintiff, who had purchased the equity of redemption, operated as an extinguishment of the mortgage, and not as an assignment to him of the rights of the mortgagees, *Eaton* v. *Simonds,* 14 Pick. 104; *Coates* v. *Cheever,* 1 Cowen, 460; *James* v. *Morey,* 2 Cowen, 301; and to the point, that a past consideration, performed without a previous request, is sufficient to support an action on an express promise, if such consideration be beneficial to the party promising, *Doty* v. *Wilson,* 14 Johns. R. 378; *Osborne* v. *Rogers,* 1 Wms's Saund. 264, note.

*Wells,* for the defendant. The transaction between the plaintiff and the mortgagees was an equitable assignment of the mortgage, by which the plaintiff became entitled to hold the land until the incumbrance should be extinguished, and the amount paid for the purchase of the equity refunded to him. There could be no merger of the legal and equitable estate here, because there was an intermediate estate or interest, to wit, the right of redeeming the equity upon certain terms, vested in the mortgager. 3 Powell on Mortgages, (Rand's ed.) 1050; *Ludlow* v. *Grayall,* 11 Price, 58; *Marsh* v. *Rice,* 1 New Hamp. R. 167; 1 Powell on Mortgages, (Rand's ed.) 316, cites *Wyndham* v. *Egremont,* Ambl. 753; 4 Kent's Comm. (3d ed.) 163.

No action can be sustained against the defendant upon the express promise, unless the transaction was beneficial to him. Now the payment of the note was not beneficial to him, for his land remained charged with the mortgage debt just as before. There was therefore no consideration for the promise. Yelv. (Metcalf's ed.) 41, note. A moral obligation is not a sufficient consideration for an express promise, unless a good or valuable consideration has once existed. *Mills* v. *Wyman,* 3 Pick

207 ; [see 2d ed. 211, note 1 ;] *Wennall* v. *Adney*, 3 Bos. &
Pul. 249, note.

WILDE J. delivered the opinion of the Court.   There was
no express proof, that the note to the Massachusetts Hospital
Life Insurance Company was paid at the request of the defend-
ant ; but the plaintiff relied on the promise of the defendant to
pay him, made subsequently to the discharge of the mortgage.
This promise, we think, is equivalent to a previous request.
It comes within the well established principle, that the subse-
quent ratification of an act done by a voluntary agent of anoth-
er, without authority from him, is equivalent to a previous au-
thority.   The law, it is true, will not allow a party to maintain
an action for money paid to discharge the debt of another with-
out his consent ; for to allow this, would subject every debtor
to the power of those who might be disposed to injure him,
and who might harass him with suits, and burden him with
costs, in the most unreasonable and oppressive manner.   But
if the debtor assents to the payment, the reason of the law
fails ; and whether the consent be given before or after the pay
ment is, as it seems to us, immaterial.   Yelv. (Metcalf's ed.)
42, note.   We have no doubt, therefore, that the defendant's
promise is valid ; first, because his ratification of the payment
is equivalent to a previous request to pay, and the objection,
that the consideration was past, cannot be maintained ; and
secondly, because the case shows an equitable consideration,
which is sufficient to sustain an express promise.   Where a
man is under a moral obligation to pay a debt, which cannot be
enforced by a court of law or equity, yet if he promises to
pay he will be bound.   As where a man promises to pay a just
debt, the recovery of which is barred by the statute of limita-
tions ; or if a minor contracts a debt, but not for necessaries,
and after he comes of age, promises to pay it ; or if a debtor
promises the assignee of a chose in action to pay him.   In all
such cases and many others, the party will be bound by his
promise, although before the promise the other party had no
remedy either in law or equity.   *Hawkes* v. *Saunders*, Cow-
per, 290.

"There is another ground on which this action might be main-
tained, if there had been no express promise.   The payment

Gleason
*v.*
Dyke.
*Sept. 26th*

Gleason
v.
Dyke.

of the mortgage debt by the plaintiff was not merely voluntary. He was bound to pay the debt in order to secure his equitable interest in the estate. He was placed in this situation by the neglect of the defendant to pay the debt due to his creditor, who levied his execution on the equity of redemption. Under these circumstances no previous request to pay the debt, or subsequent ratification by the defendant, was required. *Child* v. *Morley*, 8 T. R. 610.

It was contended by the defendant's counsel, at the trial, that the operation of the payment of the mortgage was sufficient, under the circumstances, to constitute the plaintiff the assignee thereof, and to convey to him all the right of the original mortgagee. This right, we think, is sustained by the Revised Stat. *c.* 73, § 34, 35. But it by no means follows, that the plaintiff has not a double remedy, as the mortgagee had. If the payment operated as an equitable assignment of the mortgage, it would have the same operation as to the note. If the plaintiff had a right to hold the mortgaged estate until the defendant paid the debt, then most clearly the defendant's promise is binding and obligatory, although the plaintiff had another security.

*Default entered.*